UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROLEX WATCH U.S.A., INC. )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>VARIOUS JOHN DOES NOS. 1-300, )<br>and XYZ COMPANIES NOS. 1-20, )<br>)<br>Defendants. ) | Case No.:    07-0272 (RCL) |

PLAINTIFF'S MOTION FOR A
SUPPLEMENTAL SHOW CAUSE ORDER AND SEIZURE ORDER

Plaintiff ROLEX, INC. ("Rolex") hereby moves this Court for a supplemental seizure order and in support of its motion shows the following:

1.  By order of February 7, 2007, this Court temporarily restrained certain vendors from selling, distributing and/or participating in the sale or distribution of counterfeit Rolex merchandise.

2.  Despite this Court's orders, vending stands operated by the defendants and related entities have continued to offer counterfeit Rolex merchandise for sale.  See Declaration of Monica L. Cook, attached hereto as Exhibit A.  Because defendants' vending stands move location frequently, often are tended by a number of different people and vendors rarely admit to ownership of the counterfeit merchandise, Plaintiff seeks authority to seize all counterfeit Rolex merchandise offered for sale in the general locations identified in the Complaint and the Declaration of Monica L. Cook.  Without this relief, some of the defendants and/or their agents will continue to sell counterfeit goods in violation of law and this Court's temporary and preliminary injunctions.

3.  Rather than repeat the overwhelming legal support for the entry of Plaintiff's proposed order, Plaintiff incorporates by reference its Memorandum in Support of its Motion for Temporary Restraining Order and Seizure and Impoundment Order and the points and authorities cited therein.  As evidenced by the Declaration of Monica L. Cook, defendants and/or their agents

are violating copyright and trademark law as well as the explicit orders of this Court. Entry of this Supplemental Show Cause Order and Seizure Order will serve both to enforce the law and assure compliance with this Court's orders.

4. Plaintiff requests that this Order be granted through and including August 1, 2008.

Plaintiff respectfully requests that this Court enter the proposed Supplemental Show Cause Order and Seizure Order, and grant it such other and further relief to which it may be justly entitled.

Respectfully submitted,

/s/ Ivan J. Snyder
Ivan J. Snyder
D.C. Bar No. 498461
POWELL GOLDSTEIN LLP
901 New York Avenue, N.W.
Third Floor
Washington, D.C. 20001
202-347-0066
202-624-7222 (Facsimile)

ATTORNEYS FOR PLAINTIFF
ROLEX WATCH U.S.A., INC.

OF COUNSEL:

Brian W. Brokate, Esquire
Angelo E. P. Mazza, Esquire
GIBNEY, ANTHONY & FLAHERTY
665 Fifth Avenue
New York, New York
212-688-5151
212-688-8315 (Facsimile)

Dated: March 10, 2008

::ODMA\PCDOCS\WSH\444163\1

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

ROLEX WATCH U.S.A., INC. )
)
)
Plaintiff, ) Case No.: 07-0272 (RCL)
)
vs. )
)
VARIOUS JOHN DOES NOS. 1-300, )
and XYZ COMPANIES NOS. 1-20, )
)
Defendants. )

## SUPPLEMENTAL SHOW CAUSE ORDER AND SEIZURE ORDER

Upon the Complaint herein and the exhibits annexed thereto, upon the moving declarations and upon Plaintiff's motion, it is hereby:

ORDERED that defendants show cause before this Court at Courtroom 22A, United States Courthouse, 3rd Street and Constitution Avenue, N.W., Washington, D.C., on the _____ day of _____, 2008 at 5:00 p.m., or as soon thereafter as counsel can be heard, why an order should not be entered, pursuant to 15 U.S.C. § 1116(d)(10)(A) confirming the seizure authorized herein and why a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, should not be issued enjoining defendants, their agents, servants, employees, officers, and all persons in active concert and participation with them, pending the final hearing and determination of this action:

(1) From using plaintiff Rolex Watch U.S.A., Inc.'s trademarks as shown on U.S. Trademark Registrations, including but not limited to:

(2) from using plaintiff Rolex' trademarks, as shown on US Trademark Registration, including, but not limited to: Rolex's U.S. Trademark Registrations include: Registration No. 101,819 of January 12, 1915 for the ROLEX trademark for watches, watch bracelets and related products; Registration No. 520,309 of January 24, 1950 for the PRESIDENT trademark for

watches, watch bracelets and related products; Registration No. 657,756 of January 28, 1958 for the CROWN DEVICE trademark for watches, watch bracelets and related products; Registration No. 674,177 of February 17, 1959 for the DATEJUST trademark for watches, watch bracelets and related products; Registration No. 683,249 of August 11, 1959 for the GMT-MASTER Trademark for watches, watch bracelets and related products; Registration No. 831,652 of July 4, 1967 for the DAYDATE trademark for watches, watch bracelets and related products; Registration No. 860,527 of November 19, 1968 for the SEA DWELLER trademark for watches, watch bracelets and related products; Registration No. 394,881 of May 5, 1942 for the OYSTER PERPETUAL trademark for watches, watch bracelets and related products; Registration No. 1,105,602 of November 7, 1978 for the OYSTER PERPETUAL trademark for watches, watch bracelets and related products; Registration No. 1,124,009 of August 14, 1979 for the OYSTER QUARTZ trademark for watches, watch bracelets and related products; Registration No. 239,383 of March 6, 1928 for the OYSTER trademark for watches, watch bracelets and related products; Registration No. 661,372 of May 6, 1958 for the TUDOR trademark for watches, watch bracelets and related products; Registration No. 1,404,838 of August 12, 1986 for the TUDOR GENEVE LE ROYER for watches, watch bracelets and related products (hereinafter "Plaintiff's Registered Trademarks); or as reproduced below, or any marks similar thereto in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

   (3) From possessing, receiving, manufacturing, distributing, advertising, promoting, returning, offering for sale or otherwise disposing of in any manner, holding for sale or selling any goods, labels, tags, logos, decals, emblems, signs, and other forms of markings, any packaging, wrappers, pouches, containers and receptacles, and any catalogs, price lists, promotional materials and the like bearing a copy or colorable imitation of plaintiff's trademarks;

(4) From using any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of defendants are sponsored by, authorized by, or in any way associated with the plaintiff;

(5) From infringing Plaintiff's Registered Trademarks;

(6) From otherwise unfairly competing with plaintiff;

(7) From falsely representing themselves as being connected with plaintiff or sponsored by or associated with plaintiff;

(8) From using any reproduction, counterfeit, copy, or colorable imitation of the trademarks of plaintiff in connection with the publicity, promotion, sale, or advertising of goods sold by defendants including, without limitation, clothing or related products bearing a copy or colorable imitation of plaintiff's trademarks;

(9) From affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent such goods as being those of plaintiff and from offering such goods in commerce;

(10) From using any trademark or trade name in connection with the sale of any goods which may be calculated to falsely represent such goods as being connected with, approved by or sponsored by plaintiff; and

(11) From destroying, altering, disposing of, concealing, tampering with or in any manner secreting any and all business records, invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, purchase, sale or offer for sale, or distribution of any merchandise bearing the Plaintiff's Registered Trademarks; and it is further

ORDERED that pending the hearing and determination of plaintiff's motion for preliminary injunction, defendants, their agents, servants, employees, officers, and all other persons

3

in active concert or participation with them, be and hereby are, without prior written or oral notice, temporarily restrained and enjoined from in any manner, either directly or indirectly, committing any of the acts set forth above which are sought to be enjoined by plaintiff; and it is further

ORDERED that the United States Marshal for this District, or one or more of his deputies, if readily available, or a local law enforcement officer having jurisdiction, or, if it is impractical to obtain assistance from the U.S. Marshal, his deputies or local law enforcement, one or more of the employees and agents of the Tontine Group licensed and bonded private investigative agency experienced in the civil seizure of counterfeit products, assisted by one or more attorneys or agents of the plaintiff, is directed to search, seize and sequester the following in the possession, custody or control of defendants, including on their person or in any vehicles in the possession, custody, or control of defendants at various vending stands and locations throughout Washington, D.C. where counterfeit Rolex merchandise is being sold, offered for sale, stored or distributed:

(a) All merchandise bearing any copy or counterfeit of Plaintiff's Registered Trademarks, or any markings substantially indistinguishable therefrom;

(b) All labels, tags, logos, emblems, signs, and other forms of markings, all packaging, wrappers, pouches, containers and receptacles, and all advertisements, catalogs, price lists, guarantees, promotional materials and the like bearing any copy or counterfeit of the plaintiff's trademarks or any markings substantially indistinguishable therefrom, and all plates, molds, dies, tooling, machinery, assembly equipment and other means of making the same; and,

(c) All books and records showing:

(i) defendants' manufacture, receipt and sale of merchandise bearing the aforesaid trademarks either by reference to such trademarks or by style or code number or otherwise; and,

      (ii)  defendants' manufacture, receipt and sale of any labels, tags, logos, decals, emblems, signs, and other forms of markings, any packaging, wrappers, pouches, containers and receptacles, and any catalogs, price lists, guarantees, promotional materials and the like bearing the aforesaid trademarks, either by reference to such trademarks or by style or code number or otherwise; and it is further

 ORDERED that all such sequestered merchandise and materials shall be held by the United States Marshal if possible, or if not, shall be delivered to plaintiff's attorneys or an agent thereof as substitute custodians for the Court, pending further order of this Court; and it is further

 ORDERED that to the extent necessary to effect the seizure and sequestration ordered hereinabove, the United States Marshal or law enforcement officer or member of the Tontine Group may use such force as may be reasonably necessary; and it is further

 ORDERED that plaintiffs shall provide persons capable of determining whether or not an item is covered by the preceding paragraphs and the United States Marshal or other law enforcement officer, or the employee or agent of the Tontine Group shall follow his determination in the seizure; and it is further

 ORDERED that plaintiff's agents shall promptly inspect the items seized, and if any items are found to be genuine products, such items are to be returned to defendants within seven (7) business days of the date this Order is executed; and it is further

 ORDERED that while plaintiff's counsel or its agents may photocopy and review any books and records seized pursuant to this Order, they may not disclose any trade secrets or other confidential information contained in such books and records to plaintiff or any other person pending the hearing of plaintiff's motion to confirm the seizure authorized herein; and it is further

 ORDERED that the search, seizure, and sequestration ordered hereinabove may be photographed and/or videotaped for the purpose of authenticating and assisting in the obtaining of

5

evidence and to prevent subsequent controversy concerning the events occurring during such search, seizure and sequestration; and it is further

ORDERED that pursuant to 15 U.S.C. § 1116(d)(10)(B) and Rules 30 and 34 of the Federal Rules Of Civil Procedure, plaintiff be given expedited discovery of defendants with respect to the manufacture, receipt and sale of merchandise, containers, promotional materials and labels bearing plaintiff's trademarks including discovery of the source thereof, the creation of such trademarks, the quantity of goods bearing such trademarks ordered in inventory and sold by defendants, and other matters relevant to this action and that such discovery shall take place no later than one (1) day prior to the show cause hearings scheduled herein at a date and time to be noticed by plaintiff in a Notice of Deposition; and it is further

ORDERED that plaintiff's bond, already filed and approved by the Clerk of the Court, in the sum of $20,000, is sufficient as security for the payment of such costs and damages as may be incurred or suffered by any party who is subsequently found to be wrongfully enjoined or restrained hereby, or as a result of a wrongful seizure or wrongfully attempted seizure; and it is further

ORDERED that personal service of the Summons and Complaint and of this Supplemental Show Cause Order and Seizure Order, together with copies of the papers in support thereof, may be made on defendants on or before _____, 2008, and that such service be deemed sufficient service; and it is further

ORDERED that answering papers, if any, be personally filed with this Court and personally served upon plaintiff's counsel, Powell Goldstein LLP at their offices at 901 New York Avenue, N.W., Third Floor, Washington, D.C. 20001, on or before _____, 2008, at 5:00 o'clock p.m.

Defendants are hereby put on notice that failure to attend the show cause hearings scheduled herein shall result in the confirmation of the seizure authorized herein and the immediate

issuance of the preliminary injunction, which shall be deemed to take effect immediately upon the expiration or dissolution of the temporary restraining order herein, and shall extend during the pendency of this suit the same injunctive relief previously granted by the temporary restraining order. Defendants are hereby further notified that they shall be deemed to have actual notice of the issuance and terms of such preliminary injunction, and that any act by them in violation of any of its terms may be considered and prosecuted as contempt of this Court.

ORDERED that the District Clerk shall issue Summons as to so many of the John Doe or XYZ Company Defendants as the attorneys for plaintiff may request.

ORDERED that the plaintiff is given leave to amend the Complaint to provide for the complete identities of the John Doe or XYZ Company Defendants, once they have been ascertained.

ORDERED that this Order is valid for seizures through and including _____, 2008.

The Court has granted the foregoing Supplemental Show Cause Order and Seizure Order without prior written or oral notice to defendants for the reasons set forth below:

(a) The entry of any order other than a seizure order without notice will not serve to adequately achieve the objectives underlying the Trademark Counterfeiting Act of 1984;

(b) Plaintiff has not publicized its proposed seizure order;

(c) Plaintiff has served the United States Attorney for this District, with appropriate notice of its application for a seizure order without notice pursuant to 15 U.S.C. § 1116(d)(2);

(d) Plaintiff is likely to succeed in showing that defendants have used a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services;

(e) Plaintiff will incur immediate and irreparable injury if this Court declines to grant a seizure order without notice;

7

  (f) The matters subject to said seizure order will be located at the premises of defendants;

  (g) The harm to plaintiff should this Court decline to grant plaintiff's motion for a seizure order without notice outweighs any harm which defendants may incur in the event this Court grants plaintiff's motion for a seizure order; and,

  (h) Defendants, or persons acting in concert with them, would likely destroy, move, hide or otherwise make inaccessible to the Court the matters which are subject to the proposed seizure order if plaintiff is required to proceed on notice.

                _____
                ROYCE C. LAMBERTH
                UNITED STATES DISTRICT JUDGE
                FOR THE DISTRICT OF COLUMBIA

Dated: March ___, 2008
    Washington, D.C.

ISSUED: ____.m.

::ODMA\PCDOCS\WSH\444162\1

```
UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - - - X
                                     :
ROLEX WATCH U.S.A., INC.,            :
665 Fifth Avenue                     :
New York, New York  10022            :
                                     :
                                     :
                    Plaintiff,       :
                                     :    CIVIL ACTION NO.  07-0272
                                     :                       (RCL)
    - against -                      :
                                     :
                                     :
JOHN DOE NOS. 1-300, et al.          :
                                     :
                                     :
                    Defendants.      :
- - - - - - - - - - - - - - - - - - X
```

### DECLARATION OF MONICA L. COOK

1.  I am over the age of eighteen years, of sound mind and am not a party to this action. I am employed by The Tontine Group, a licensed and bonded private detective agency in the District of Columbia.

2.  The Tontine Group has been retained by Gibney, Anthony & Flaherty, counsel to Rolex Watch U.S.A., Inc., 665 Fifth Avenue, New York, New York, for the purpose of identifying, street vendors and stores in Washington, D.C., displaying, offering and/or selling suspected counterfeit Rolex watches and in that connection and for that purpose The Tontine Group and I have been given instruction and information by Rolex representatives in identifying counterfeit Rolex watches.

3.  In this connection and for a period of over twenty-four months, The Tontine Group and I have conducted a number of investigations and surveys of street vendors throughout the

Washington, D.C., area for the purpose of identifying those street vendors and individuals and other entities trafficking in suspected counterfeit Rolex merchandise. During this time I participated in more than 72 investigations and surveys of street vendors.

4. During these investigations, the identity of the street vendors could not be ascertained in many cases because the vendors would not display their vending licenses, if they were indeed licensed; often persons other than the vendor-owner would operate the stands; vendors often would relocate their stands to other sites (sometimes over several blocks or across town) in the same general area in the downtown area of the District of Columbia; and the vendors would hide their counterfeit Rolex watches if they thought the counterfeit watches might be seized.

5. On Wednesday, February 27, 2008, I surveyed the Washington, D.C. Metropolitan area, for the purpose of identifying those street vendors and individuals and other entities trafficking in suspected counterfeit Rolex merchandise. I found that the following vendor locations were displaying, offering and/or selling counterfeit Rolex watches as described below. Based on my examination of the watches at each of these locations, it is my opinion that the Rolex watches offered for sale by the following vendors were counterfeit:

    a. An unidentified female located on the 1700 block of K Street, NW, Washington, D.C.

    b. An unidentified male located on the 1400 block of 14th Street, NW, Washington, D.C.

6.   As stated in Paragraph 4, relocation is customary among street vendors; they are seldom consistently situated at a fixed location. Likewise, vending stands are frequently operated by different persons on different days, impeding the ability of investigators to re-establish their positions on a day-to-day basis. Further impediment is the lack of clearly displayed licenses identifying particular vendors.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 27, 2008                         _____
                                                      Monica L. Cook